## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **Criminal Action No. 1:04-cr-6** |
| v. | : | |
| | : | **(Chief Judge Kane)** |
| NOE LEINHEISER, | : | |
| Defendant | : | |

### MEMORANDUM

Before the Court is Noe Leinheiser's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 77), in which he alleges that he was denied effective assistance of counsel. The Government argues that, by his plea agreement, Leinheiser waived his right to bring a motion pursuant to § 2255, and that his motion should therefore be denied without reaching the merits of his allegations. For the reasons that follow, though the Court finds that Leinheiser did not waive his right to pursue his § 2255 claim, Leinheiser's motion will be denied because he has not shown that his counsel was constitutionally ineffective.

## I.      BACKGROUND

On January 7, 2004, a grand jury in the Middle District of Pennsylvania issued a three-count indictment charging Noe Leinheiser with sexual exploitation of children in violation of 18 U.S.C. § 2251, possession of child pornography in violation of 18 U.S.C. § 2252A, and transportation of minors with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423.  (Doc. No. 1.)  On February 25, 2004, Leinheiser appeared for his arraignment, at which he pleaded not guilty, and the Court appointed counsel to represent him (hereinafter referred to as "plea counsel").  Thereafter, a superseding indictment was filed, adding two additional counts of sexual exploitation of children and seeking forfeiture of certain property.

(Doc. No. 10.)  A second superseding indictment was filed on May 12, 2004, adding another two counts of sexual exploitation of children.  (Doc. No. 20.)

Anticipating the commencement of trial on August 2, 2004, Leinheiser filed a motion in limine seeking to exclude certain videotapes and photographs of nude women who were adults at the time of videotaping, on the grounds that such evidence was irrelevant, unduly prejudicial, and improper character evidence.  (Doc. No. 29.)  The parties briefed the motion (Doc. Nos. 30, 32), and the attorneys submitted proposed voir dire questions (Doc. Nos. 31, 33).

On August 2, 2004, a jury was selected.  Shortly after jury selection, Leinheiser signed a binding plea agreement with a plea to counts III, VII and VIII, and dismissal of the remaining counts. The plea agreement stipulated a sentence of twenty-two (22) years.  (Doc. No. 34.) One of the counts involved sexual intercourse with a 16 year-old neighbor, but the plea agreement did not address it.  Shortly after the plea agreement was signed, the Court met with the attorneys and indicated that it would not accept the guilty plea.

Two days later, the parties executed a second plea agreement with a stipulated sentence of twenty-five (25) years.  (Doc. No. 40.)  The plea agreement also contained the following provision by which Leinheiser agreed to waive his right to collaterally attack his sentence:

> The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the conviction and sentence imposed.  Acknowledging all of this, the defendant knowingly waives the right to appeal any conviction and sentence imposed pursuant to this Agreement, on any and all grounds set forth in Title 18, United States Code, Section 3742 or any other grounds, constitutional or non-constitutional, including the manner in which that sentence was determined in light [of] Blakely v. Washington, 2004 WL 1402697 (June 24, 2004).  The defendant also waives the defendant's right to challenge any conviction or sentence or the manner in which the sentence was determined in any collateral proceeding, including but not limited to a motion brought under Title

> 28, United States Code, Section 2255.   The defendant further
> acknowledges that this appeal waiver is binding only upon the
> defendant, and that the United States retains its right to appeal in this
> case.

(Doc. No. 40, ¶ 21.)  On August 4, 2004, the Court held a change-of-plea hearing, at which the

Court conducted a colloquy with the defendant.  At the conclusion of the hearing, the Court

accepted the plea agreement and scheduled a date for sentencing.

On October 14, 2004, Leinheiser's counsel filed a motion to withdraw as counsel, in

which he indicated that Leinheiser made certain accusations against him that limited his ability

to provide effective representation.  (Doc. No. 47.)  The Court granted the motion, permitted

counsel to withdraw, appointed new counsel (hereinafter "sentencing counsel") to represent

Leinheiser, and on November 15, 2004, sentenced Leinheiser to the stipulated term of twenty-

five years' imprisonment.  (Doc. Nos. 48, 53.)  No appeal was filed.

In December 2005, Leinheiser filed a motion to vacate his sentence, in which he alleged

that plea counsel provided ineffective assistance during the plea negotiations.  (Doc. No. 77.)

Thereafter, the Court issued an administrative order pursuant to United States v. Miller, 197 F.3d

644 (3d Cir. 1999), and Leinheiser elected to proceed with the motion.  (Doc. Nos. 83–87.)  The

Court then issued a show cause order directing the United States Attorney's Office to respond,

and on July 10, 2006, the Government filed a brief in opposition, arguing solely that Leinheiser

waived his right to collaterally attack his sentence.  (Doc. No. 90.)  Leinheiser filed a reply on

July 21, 2006.  (Doc. No. 91.)

The Court then issued an order appointing counsel to represent Leinheiser (Doc. No. 92),

and the Court held an evidentiary hearing on Leinheiser's motion.  The parties thereafter

submitted proposed findings of fact and conclusions of law.  (Doc. Nos. 132, 143, 145.)

3

## II.    FINDINGS OF FACT

1.    On January 7, 2004, Leinheiser was indicted on charges of sexual exploitation of children
      in violation of 18 U.S.C. § 2251, possession of child pornography in violation of 18
      U.S.C. § 2252A, and transportation of minors with intent to engage in criminal sexual
      activity in violation of 18 U.S.C. § 2423.

2.    On February 25, 2004, Leinheiser appeared for his arraignment at which he pleaded not
      guilty, and the Court appointed plea counsel to represent him.

3.    On March 31, 2004, a superseding indictment was filed against Leinheiser, and on May
      12, 2004, a second superseding indictment was filed.

4.    Plea counsel, acting on Leinheiser's behalf, filed a motion in limine seeking to preclude
      certain video evidence on the grounds that such evidence was inadmissible under the
      Federal Rules of Evidence.

5.    On August 2, 2004, after jury selection and after discussions with plea counsel during
      which counsel explained the terms of a plea agreement to Leinheiser, the parties signed a
      plea agreement with a stipulated sentence of twenty-two years.

6.    After the Court indicated its unwillingness to accept the plea agreement, the Government
      prepared a plea agreement with a stipulated sentence of twenty-five years.

7.    On August 3, 2004, plea counsel submitted a letter to the Court seeking permission to
      raise a mistake-of-age defense.  The Government did not object to the request to raise the
      affirmative defense.  Plea counsel is not certain that he informed Leinheiser of the
      Government's position.

8.      On August 4, the Assistant United States Attorney (AUSA) arranged for a meeting in the
United States Marshal's office in Harrisburg between himself, Leinheiser, plea counsel,
and an FBI case agent.

9.      During that meeting, Leinheiser was told by the AUSA that the Court would not accept a
plea agreement with a stipulated sentence of fewer than twenty-five years.  The AUSA
also told Leinheiser that the Court handed out severe sentences and that the Court would
be inclined to impose a harsh sentence because the undersigned has daughters.

10.     Leinheiser felt intimidated during this meeting, but no threats, direct or indirect, were
made.

11.     Leinheiser then indicated that he had some "demands" before signing the plea agreement.
Specifically, Leinheiser wanted to be moved from Dauphin County Prison and to see his
children.  The AUSA explained that the plea agreement would not include those terms,
but that he would be willing to work with Leinheiser on those concerns.  Leinheiser
understood that these "demands" were not part of the agreement.

12.     During the meeting, plea counsel and the AUSA explained to Leinheiser what the guilty
plea process would entail and indicated that if he appeared equivocal the Court might not
accept his plea.

13.     After the meeting, Leinheiser signed a plea agreement with a stipulated sentence of
twenty-five years.  One of the terms of the plea agreement provided that Leinheiser
waived his right to file an appeal or to collaterally attack his conviction or sentence.

14.     The Court held a plea hearing on August 4, 2004, and the Court conducted a plea
colloquy to determine whether Leinheiser had knowingly and voluntarily entered into the

plea agreement.  After the colloquy, the Court accepted his guilty plea and the plea

agreement.

15.    Thereafter, Leinheiser was moved from Dauphin County Prison, and the FBI agent

       facilitated a meeting with Leinheiser's children.

16.    At some point after the guilty plea had been entered, Leinheiser desired to seek new

       counsel in the matter.

17.    On October 14, 2004, plea counsel moved to withdraw as counsel.  The Court granted the

       motion and appointed sentencing counsel.

18.    In November 2004, sentencing counsel met with Leinheiser to discuss sentencing, and at

       that meeting, sentencing counsel was not familiar with the specifics of the plea

       agreement.

19.    During that meeting, Leinheiser expressed an interest in withdrawing his guilty plea to

       sentencing counsel.  Sentencing counsel explained to Leinheiser that: withdrawing a

       guilty plea was very difficult; the evidence of his guilt was "overwhelming"; that

       Leinheiser would be back to "square one"; and that it would be unlikely that another

       attorney would be appointed to represent him.

20.    On November 15, 2005, Leinheiser was sentenced to a term of imprisonment of twenty-

       five years.

III.   **DISCUSSION**

       A.    **Whether Leinheiser waived his right to collaterally attack his sentence**

       At the outset, the Court must determine whether Leinheiser validly waived his right to

collaterally attack his sentence under 28 U.S.C. § 2255 by entering into a plea agreement

containing a provision that purportedly eliminated his "right to challenge any conviction or sentence or the manner in which the sentence was determined in any collateral proceeding . . . ."

By entering into a plea agreement, a defendant necessarily waives certain individual rights. Most fundamentally, he waives the right to trial by jury guaranteed by the Sixth Amendment. He can also, however, waive other rights. For example, in certain cases, a defendant can waive his rights against double jeopardy, Ricketts v. Adamson, 483 U.S. 1, 10 (1987), and he can waive his right to appeal, United States v. Khattak, 273 F.3d 557, 562 (3d Cir. 2001).

Indeed, it is settled that a defendant may waive his right to appeal his sentence if two conditions are met: (1) the waiver is knowing and voluntary; and (2) the waiver does not effect a miscarriage of justice. Khattak, 273 F.3d at 562. The United States Court of Appeals for the Third Circuit has routinely applied this rule to appellate waivers. See, e.g., United States v. Jackson, 523 F.3d 234, 243-44 (3d Cir. 2008) (holding that "claims of an unreasonable sentence, standing alone" do not satisfy miscarriage of justice standard); United States v. Gwinnett. 483 F.3d 200, 203 (3d Cir. 2007) (holding that the court retained subject matter jurisdiction over an appeal where defendant signed an appellate waiver and finding that defendant's waiver was valid); United States v. Lockett, 406 F.3d 207, 214 (3d Cir. 2005) (holding that "where a criminal defendant has voluntarily and knowingly entered into a plea agreement in which he or she waives the right to appeal, the defendant is not entitled to resentencing in light of [United States v. Booker, 543 U.S. 220 (2005)]").

Here, the question is whether a defendant can waive the right to collaterally attack his sentence, a question recently answered in the affirmative by the Third Circuit. United States v.

Mabry, 536 F.3d 231, 242 (3d Cir. 2008) (enforcing the collateral waiver provision of a plea

agreement); see also, United States v. Lemaster, 403 F.3d 216 (4th Cir. 2005) ("Every Circuit

Court of Appeals to consider the issue . . . has held that the right to attack a sentence collaterally

may be waived so long as the waiver is knowing and voluntary."). In Mabry, the Third Circuit

rejected the idea that a collateral waiver provision would be automatically invalid and

determined that it should be analyzed in accordance with other waiver provisions: on the basis of

whether the waiver was given knowingly and voluntarily, and whether enforcement would work

a miscarriage of justice. Mabry, 536 F.3d at 240-43.

Having concluded that a defendant may waive his right to collateral attack, the Court

must determine whether the waiver was knowing and voluntary.  Leinheiser claims that plea

counsel was ineffective at the plea negotiation, and therefore, that his waiver was involuntary

and unknowing.  He also claims that his responses at the plea hearing were the product of

"coaching" by his attorney and the AUSA, who warned him that the judge would not accept his

plea if he was equivocal during the hearing.  The Government, by contrast, argues that the

"extensive and thorough plea colloquy conducted by the Court demonstrates an overwhelmingly

clear understanding by Leinheiser of every aspect of his plea agreement, the waivers of rights

and his sentence."  (Doc. No. 143, at 11.)

Whether a waiver is knowing and voluntary depends on a sentencing judge's compliance

with Federal Rule of Criminal Procedure 11.  Khattak, 273 F.3d at 563.  Under Federal Rule of

Criminal Procedure 11(b), the Court must "inform the defendant of, and determine that the

defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal

or to collaterally attack the sentence."  Fed. R. Crim. P. 11(b)(1)(N).

At the plea hearing, the Court confirmed that: Leinheiser signed the plea agreement (Guilty Pl. Tr. 15); that he had understood the essential terms of the agreement (Id. at 15); that he had "full opportunity to discuss the charges with [plea counsel], to discuss with him the plea agreement, and to make a good decision for [himself] about how to go forward" (Id. at 5); that he was satisfied with the counsel given by plea counsel (Id.); that he signed the agreement willingly (Id. at 15); and that he understood the finality of the agreement (Id.).

Moreover, the AUSA highlighted certain provisions of the plea agreement, including that Leinheiser was "waiv[ing] his right to challenge his conviction and sentence or the manner in which the sentence is determined in any collateral proceeding including, but not limited to, a motion brought pursuant to Title 28, United States Code, Section 2255," and Leinheiser affirmed that he understood the terms of the agreement.  (Id. at 14-15.)  Leinheiser also stated that he understood that he was "also waiving forever any appellate rights that [he] might have in this case."  (Id. at 26.)  The Court has little doubt that Leinheiser entered into the plea agreement knowingly and voluntarily.

Nevertheless, with respect to his ability to file a motion under § 2255, the record is not so clear.  Leinheiser was not directly informed by the Court at the hearing that he was waiving a right to collaterally attack his conviction or sentence.  Nor did Leinheiser express that he understood that he was waiving that right.  He may have understood the *terms* of the agreement, as read by the Assistant United States Attorney, but the record of the plea hearing is unfortunately ambiguous as to Leinheiser's knowledge of the ramifications of that waiver.  This omission is compounded by the fact that Leinheiser's newly-appointed counsel did not display thorough familiarity with the plea agreement.  Under the circumstances, it cannot be said that

Leinheiser was aware of the waiver's consequences.  Moreover, there is post-hearing evidence

that suggests that Leinheiser did not appreciate the scope of the waiver.  For example, Leinheiser

testified during the evidentiary hearing that at the time of sentencing he believed that his best

chance was to "go into prison and fight it in the prison, through the prison system."  (Hrg. Tr.

159.)  That Leinheiser believed he would be able to collaterally attack his sentence though he

already waived that right is evidence of an incomplete understanding of the waiver.

For these reasons, the Court finds that Leinheiser did not effect a valid waiver because

any waiver was unknowing and involuntary. There is no need to engage in discussion of whether

effecting the waiver would constitute a miscarriage of justice; the waiver will be set aside, and

the Court will proceed to the merits of Leinheiser's § 2255 motion.

**B.      Whether Leinheiser was denied the right to effective assistance of counsel**

Leinheiser's ineffective assistance of counsel claim is twofold.  First, Leinheiser argues

that plea counsel provided ineffective assistance because he failed to advise Leinheiser of a

possible defense at trial.  Second, Leinheiser argues that sentencing counsel provided ineffective

assistance of counsel by barring him from withdrawing his guilty plea.  Because the Court finds

that Leinheiser was afforded the constitutionally required effective assistance of counsel at both

points in this proceeding, his motion for relief under § 2255 will be denied.

**1.      General Principles**

Ineffective assistance of counsel claims are evaluated according to the two-part test

established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984).  Under

Strickland, for a court to find that a defendant was deprived of his constitutional guarantee to

effective assistance of counsel, a movant must establish that: (1) counsel's performance was

deficient and (2) that deficient performance prejudiced defendant.  Id.  To show that counsel's

performance was deficient, a defendant must demonstrate that his counsel "made errors so

serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment."  Id.  To show prejudice, a defendant must demonstrate that his "counsel's errors

were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable"  Id.

Though both parts of the Strickland test are necessary to conclude that counsel was provided

constitutionally ineffective assistance, as a practical matter, it is the preferred approach to

consider whether any alleged error was prejudicial before considering whether counsel's

performance was deficient "because this course of action is less burdensome to defense counsel."

United States v. Booth, 432 F.3d 542, 546 (3d Cir. 2005) (quoting United States v. McCoy, 410

F.3d 124, 132 n.6 (3d Cir. 2005)).

### 2.        Plea Counsel

Leinheiser argues that plea counsel was ineffective because he: failed to inform the Court

of the "coercive nature" of the plea meeting; did not "follow[] up on the bias issues raised by the

Government with a recusal motion"; did not "properly advis[e] [Leinheiser] as to his right to

cross examine juvenile witnesses at trial"; and did not advise Leinheiser of the ability to raise a

mistake-of-age defense.  (Doc. No. 123, at 19.)  There is no evidence on record to support

counsel's alleged failings and no legal or factual support for Petitioner's belief that the

undersigned's gender or parental status would serve as a basis for a motion to recuse. Moreover,

even if true, Leinheiser's argument fails because he cannot show prejudice.

In the context of plea negotiations, the standard of prejudice is that "there is a reasonable

probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and

would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 60 (1985).  In this case, the

claimed errors relate to counsel's alleged failure to advise.  However, during the plea colloquy,

the Court established that Leinheiser had "adequate time" to discuss the plea agreement with

counsel and that he was satisfied with counsel, that he signed the agreement willingly, and that

no one threatened, coerced, or made additional promises in order to elicit a guilty plea.  In

addition, the Court clarified that Leinheiser was waiving his right to raise a mistake-of-age

defense.  Moreover, the Court explicitly stated that the Government would have "called the

young women who were named or disclosed to your lawyer in connection with those

pornography counts" to testify at trial and that "[his] lawyer would have the right to

cross-examine all of the witnesses and to challenge all of the evidence that he would present at

trial."  (Guilty Pl. Tr. 8.)  As such, any failure to provide sufficient advice to Leinheiser by plea

counsel was ultimately cured by the Court during the plea hearing.

Leinheiser asserts that his statements at the plea hearing were products of  "coaching" by

the Government and his counsel. After a thorough review of the record now before it, the Court

finds, as it had before, that Leinheiser did in fact enter the plea knowingly and voluntarily.  His

statements to the Court, while terse, indicated that he had made his choice to proceed, even if he

wavered later.  This conclusion is further buttressed by the fact that Leinheiser had previously

agreed to a guilty plea on August 2, 2004—two days *before* the alleged coercion by the

Government "infected" the proceedings.  It is the finding of the Court that, allegations of

impropriety notwithstanding, Leinheiser had a complete understanding of the seriousness of his

guilty plea, and after weighing his options, decided on August 4, 2004, to forego his right to trial.

Accordingly, because the Court cured any potential prejudice through its thorough plea colloquy

and because Leinheiser would not have proceeded to trial, the Court finds that he cannot show

that any purported deficiencies by plea counsel caused him prejudice.

### 3.     Sentencing Counsel

Leinheiser argues that sentencing counsel was constitutionally deficient because counsel

"was unprepared, knew nothing about the case or even the kind of plea that had been entered."

(Doc. No. 123, at 18.)  Once again, Leinheiser fails to identify any prejudice from the alleged

deficiencies.[1]  In particular, there is no indication by Leinheiser that any error by sentencing

counsel caused him to suffer any prejudice in sentencing.  Nor has he shown that the Court

would have allowed him to withdraw his guilty plea.  Absent some showing of prejudice,

Leinheiser's claim of ineffective assistance of counsel fails.

## IV.     CONCLUSIONS OF LAW

1.     If Leinheiser had knowingly and voluntarily waived his right to file a motion pursuant to

28 U.S.C. § 2255, to enforce that waiver would constitute a miscarriage of justice.

2.     Under the standard set forth in <u>Strickland</u>, Leinheiser is unable to demonstrate that he

was deprived of a right to effective assistance of counsel by either plea counsel or

sentencing counsel.

## V.     CONCLUSION

Accordingly, the Court will deny Leinheiser's motion to vacate his sentence pursuant to

28 U.S.C. § 2255.  An appropriate order follows.

---

[1] At most, Leinheiser argues that sentencing counsel failed to explain the waiver of the right to collaterally attack his sentence.  Though this may be sufficient to invoke a "miscarriage of justice" exception to waiver, it does not present a ground for relief under § 2255.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | **Criminal Action No. 1:04-cr-6** |
| **v.** | **:** | |
| | **:** | **(Chief Judge Kane)** |
| **NOE LEINHEISER,** | **:** | |
| **Defendant** | **:** | |

## <u>ORDER</u>

**AND NOW**, on this 29th day of January, 2009, for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT** Noe Leinheiser's motion to vacate filed pursuant to 28 U.S.C. § 2255 (Doc. No. 77) is **DENIED**.


 S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania